JUDGE JONES

'08 CIV 7308•

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MODERN EQUITY, INC.,

          Plaintiff,

v.

MT. HAWLEY INSURANCE COMPANY,

          Defendant.

**NOTICE OF REMOVAL**

Civil Action No. _____

AUG 18 2008
U.S.D.C. S.D. N.Y.
CASHIERS

      Pursuant to 28 U.S.C. §§ 1441(a) and 1446, defendant Mt. Hawley Insurance Company ("Mt. Hawley"), by and through its attorneys, Kenney Shelton Liptak Nowak LLP, hereby provides notice of removal of this action from the New York Supreme Court, New York County, to this Court, and in support thereof states:

      1.     Plaintiff Modern Equity, Inc. ("Modern Equity") is a New York corporation with its principal place of business in New York.

      2.     Mt. Hawley is a Delaware corporation with its principal place of business in Illinois.

      3.     On or about August 7, 2008, Modern Equity commenced this action in New York Supreme Court, New York County by way of an Order to Show Cause. The Order to Show Cause and a Summons and Verified Complaint were thereafter served on Mt. Hawley by August 13, 2008. A copy of the Summons and Verified Complaint is attached hereto as Exhibit A. A copy of the Order to Show Cause (with attachments) is attached hereto as Exhibit B. Upon information and belief, the Order to Show Cause and the Summons and Verified Complaint are the only process and/or pleadings in this action to date.

4.    In its complaint, Modern Equity seeks a declaration that Mt. Hawley must defend and indemnify Modern Equity in an underlying bodily injury action pending in New York State Supreme Court, Kings County captioned Vineda Cooke v. Modern Equity Company, Inc. and Time Warner Cable, Inc. (Index No. 35487/07). Modern Equity alleges it is entitled to coverage under an insurance policy issued by Mt. Hawley. See Ex. A.

5.    The Mt. Hawley policy at issue is subject to a per-occurrence limit of $1 million. Mt. Hawley removes this action pursuant to 28 U.S.C. § 1332(a)(1) based upon complete diversity among the parties and an amount in controversy that, upon information and belief, exceeds $75,000.

6.    Notice of filing of this Notice of Removal, along with this Notice of Removal, will be promptly filed with the Clerk of the New York Supreme Court, New York County, and service of this Notice of Removal will be promptly served on Modern Equity.

Dated: August 15, 2008

Respectfully submitted,

KENNEY SHELTON LIPTAK NOWAK LLP

By: _____
Timothy E. Delahunt
Bar Roll No. TD-2791

510 Rand Building
14 Lafayette Square
Buffalo, New York 14203
Tel: (716) 853-3801
Fax: (716) 853-0265
e-mail: TEDelahunt@kslnlaw.com

*Attorneys for defendant Mt. Hawley Insurance Company*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰 X

MODERN EQUITY COMPANY, INC.,

*Index No.: LL R23/08*
*Purchased Date: 7/31/2008*

*Plaintiff,*

**SUMMONS**

- against -

*Plaintiff designates*
*New York County*
*as the place of trial.*

MT. HAWLEY INSURANCE COMPANY,

*The basis of venue is the*
**Plaintiff's place of business.**

*Defendant.*

*Plaintiff's place of business:*
**200 West 70th Street**
*New York, New York 10023*

〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰 X

*TO THE ABOVE NAMED DEFENDANTS:*

  *YOU ARE HEREBY SUMMONED* to answer the *Complaint* in this action and to serve a

copy of your answer on the Plaintiff's attorneys within twenty (20) days after service of this

*Summons*, exclusive of the day of service (or within thirty (30) days after the service is complete if

this *Summons* is not personally delivered to you within the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you for the relief demanded in the

*Complaint.*

Dated:   New York, New York
         July 24, 2008

                    Yours, etc.

                    SPERBER DENENBERG & KAHAN, P.C.

                    *By: Jacqueline Handel-Harbour, Esq.*
                    *Attorneys for Plaintiffs*
                    **48 West 37th Street, 16th Floor**
                    **New York, New York 10018**
                    **(917) 351-1335, ext. 26**

NOTE:  The law provides that: (A) If this Summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY days after such service; or (B) If this Summons is served by delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York, you are allowed THIRTY days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

w:\selena\jacqui\orders\Mt Hawley(summons-sup)

TO:    *MT. HAWLEY INSURANCE COMPANY*
       *9025 North Lindbergh Drive*
       *Peoria, Illinois 61615*

       *MT. HAWLEY INSURANCE COMPANY*
       *655 Winding Brook Drive, Fourth Floor*
       *Glastonbury, Connecticut 06033*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━ X

MODERN EQUITY COMPANY, INC.,

                   *Plaintiff,*

    - *against* -

MT. HAWLEY INSURANCE COMPANY,

                   *Defendant.*

━━━━━━━━━━━━━━━━━━━━━━━━━ X

*Index No.:*       /08

<u>**VERIFIED COMPLAINT**</u>

Plaintiff, **MODERN EQUITY COMPANY, INC.,** by its attorneys, ***Sperber, Denenberg & Kahan, P.C., 48 West 37th Street, 16th Floor, New York, New York 10018,*** as and for its complaint against the Defendant, Mt. , alleges as follows:

### *THE PARTIES*

1.     That Plaintiff, MODERN EQUITY COMPANY, INC., at all times hereinafter mentioned, was and is a domestic corporation organized and existing under the laws of the State of New York and authorized to do business under the laws of the State of New York.

2.     That Plaintiff maintains its principal offices in the City of New York, County of New York, 200 West 70th Street, New York, New York 10023.

3.     That Defendant, MT. HAWLEY INSURANCE COMPANY, was and is a property and casualty insurance company, domiciled in Connecticut and personally authorized to do business under the laws of the State of New York.

4.     That Defendant maintains its principal offices at 655 Winding Brook Drive, 4th Floor, Glastonbury, Connecticut 06033, <u>and</u> 9025 North Lindbergh Drive, Peoria, Illinois 61615.

*w:\selena\jacqui\orders\Mt Hawley(insurance)*

5.    That on or about June 30, 2005, Defendant issued a Commercial General Liability Coverage Insurance Policy No. MGL0142595 to Melvin Kaplan and Plaintiff effective from June 30, 2005 to June 30, 2006, which insured the premises known as 200-204 West 70th Street, New York, New York. The said policy, among other things, provided that the Defendant would indemnify the Plaintiff against legal liability resulting from bodily injury or property damage to others emanating from the operations of the premises.

6.    Within a Summons and Complaint verified on September 17, 2007, Vineda Cooke commenced an action against Modern Equity Company, Inc. among others for an occurrence that allegedly occurred on April 3, 2006, on the public sidewalk, at 222 Amsterdam Avenue, New York, New York *(hereinafter referred to as "Kings County action")*. The action is venued in the County of Kings and carries Index No. 35487/07.

7.    That the Plaintiff herein did not receive a copy of the Summons and Complaint.

8.    That Plaintiff does not know Vineda Cooke.

9.    That Plaintiff had not received notice of the alleged occurrence from Vineda Cooke or any other individual prior to commencement of the Kings County action.

10.    That the first time Plaintiff received notice of the action and/or alleged incident therein was upon service of a Notice of Motion for a default to be entered against Plaintiff dated June 17, 2008, by first class mail.

11.    That Plaintiff immediately forwarded the Notice of Motion and Summons and Complaint to Defendant upon receipt thereof.

12.    That Plaintiff's default in the "Kings County action" will be vacated upon serving and filing an answer.

*w:\selena\jacqui\orders\Mr Hawley(insurance)*

13.    That Defendant provided insurance for Plaintiff during the time of the occurrence at issue.

14.    That Defendant, without adequate justification, has wrongfully declined to cover, indemnify and defend Plaintiff in the above-referenced action.

15.    That within a letter dated July 21, 2008, Defendant advised Plaintiff's attorney that since Plaintiff had an outdated address with the Secretary of State on file, the late notice to them is not a reasonable excuse for delay in reporting the incident.

16.    That the disclaimer of liability and denial of coverage is wrongful and in violation of the insurance contract and of New York State law, especially in light of the default in the Kings County case being opened.

17.    That the determination of the rights and obligation of the parties to this action is necessary before the action referred to in paragraph "6" may proceed.

### AS AND FOR A FIRST CAUSE OF ACTION

18.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "17" above as if such allegations were set forth in full herein.

19.    That Defendant provided insurance coverage for Plaintiff at the time of the occurrence in question.

20.    That said insurance covers Plaintiff for the incident at issue.

21.    That Defendant declined coverage and refused to defend and indemnify Plaintiff in the Kings County Supreme Court matter, under Index No. 35487/07.

22.    That this disclaimer of liability and denial of coverage is wrongful and in violation of the Defendant's insurance contract and of New York State law.

w:\selena\jacqui\orders\Mt Hawley(insurance)

23.    That the determination of the rights and obligations of the parties to the action is necessary before the action referred to in paragraph "6" may proceed.

24.    That Plaintiff seeks a declaration that Defendant must indemnify and defend Plaintiff within the Kings County action.

25.    That Plaintiff has no adequate remedy at law.

### AS AND FOR A SECOND CAUSE OF ACTION

26.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "25" above as if such allegations were set forth in full herein.

27.    That Plaintiff has been forced to incur legal fees in prosecuting this matter. The total legal fees incurred and to be incurred will be no less than **$10,000.00**.

28.    That Defendant is liable to Plaintiff for said legal fees and other court costs incurred and to be incurred in prosecuting this matter.

*WHEREFORE*, the Plaintiff prays for a judgment to be entered herein declaring:

a.    *that the disclaimer of liability and denial of coverage by Defendant was improper and wrongful;*

b.    *that Defendant is required to defend Plaintiff and to pay the Claimant, Vineda Cooke, any judgment which said Claimant may obtain against Plaintiff up to the extent of coverage in the policy referred to herein; in the alternative*

c.    *that this Court issue a Temporary Restraining Order to stop Defendant from disclaiming coverage and compel Defendant to defend Plaintiff while declaratory judgment is pending;*

d.    *that Plaintiff be awarded legal fees of no less than $10,000.00 plus other court costs for being forced to prosecute this matter; and*

e.    for such other, further and different relief as the Court may deem
     to be just, proper and equitable.

Dated:   New York, New York
         July 24, 2008

                              Yours, etc.

                              SPERBER DENENBERG & KAHAN, P.C.

                              By: Jacqueline Handel-Harbour, Esq.
                              Attorneys for Plaintiff
                              48 West 37th Street, 16th Floor
                              New York, New York 10018


TO:   *MT. HAWLEY INSURANCE COMPANY*
      *9025 North Lindbergh Drive*
      *Peoria, Illinois 61615*

      *MT. HAWLEY INSURANCE COMPANY*
      *655 Winding Brook Drive, Fourth Floor*
      *Glastonbury, Connecticut 06033*


*w:\selena\jacqui\orders\Mt Hawley(insurance)*

# *VERIFICATION*

*MATTHEW KAPLAN,* being duly sworn, deposes and says, that I am an officer of **Modern Equity Company, Inc.,** plaintiff in the action herein and have read the annexed *Summons and Verified Complaint,* know the contents thereof and the same are true to the best of my knowledge, except as to the matters stated to be, upon information and belief, and as to those matters believed to be true.

_____
**MATTHEW KAPLAN**

Sworn to before me this
24 day of July 2008.

_____
NOTARY PUBLIC

MITCHELL D. KAPLAN
Notary Public, State of New York
No. 4945483
Qualified in New York County
Commission Expires Dec. 19, 2010

*w:\selena\jacqui\orders\Mt Hawley(insurance)*

Index No.                          Year 20 08

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MODERN EQUITY COMPANY, INC.,

*Plaintiff,*

- against -

MT. HAWLEY INSURANCE COMPANY,

*Defendant.*

## SUMMONS WITH VERIFIED COMPLAINT

SPERBER DENENBERG & KAHAN, P.C.

Attorneys for

*Plaintiff*

48 West 37th Street
16th Floor
New York, New York 10018
(917) 351-1335

To:

Attorney(s) for

Service of a copy of the within                                      is hereby admitted.

Dated:

· · · · · · · · · · · · · · · · · · · · · · · ·

Attorney(s) for

PLEASE TAKE NOTICE

☐
NOTICE OF
ENTRY

that the within is a (certified) true copy of a
entered in the office of the clerk of the within named Court on                     20

☐
NOTICE OF
SETTLEMENT

that an Order of which the within is a true copy will be presented for settlement to the Hon.
one of the judges of the within named Court.

at
on                              , at                         M.

Dated:

SPERBER DENENBERG & KAHAN, P.C.

Attorneys for

48 West 37th Street
16th Floor

222103

APP......
FOR T......
OF MOT......
ON......

EX PARTE MOTION TERM

At an IAS Motion Part _____ of the
Supreme Court of the State of New York held
in and for the County of New York, City and
State of New York at the courthouse located
at 60 Centre Street, New York, New York,
on the ___ day of July 2008.
          AUGUST

P R E S E N T :   HON. **JOHN E.H. STACKHOUSE**

                            *JUSTICE*

011398              018264
X

**MODERN EQUITY COMPANY, INC.,**

                            *Plaintiff,*

                                        *Index No.:* 602233/08

- against -

                                        **ORDER TO**
                                        **SHOW CAUSE**

**MT. HAWLEY INSURANCE COMPANY,**

                            *Defendant.*

                                    X

INDEX NUMBER 602233  YEAR 2008
  6 RJI FEE                    95.10
  15 MOTIONS                   45.00
    TOTAL                     140.00
    CHECK                      45.00

*UPON* the annexed affirmation of *Jacqueline Handel-Harbour,* dated July 29, 2008;

the affidavit of *Matthew Kaplan,* sworn to on the 24th day of July 2008; the annexed

**Memorandum of Law**; the Summons and Complaint being simultaneously filed herein; the

exhibits annexed hereto; and due deliberation had herein; it is hereby

TIME FE
05183 5000  08 AUG 15 12:40 PM

*ORDERED* that the Plaintiff, and/or its attorney(s) show cause before this Supreme

Court in Part 8 , Room 278 of the courthouse located at ████████████

████████████████████████████████, in the forenoon, or as soon thereafter

as counsel for either side can be heard,

*WHY* an Order should not be made and entered herein, as follows:

> *(a)*    *Declaring that Plaintiff is covered by Defendant's insurance*
> *policy and compelling Defendant to cover, defend and indemnify*

w:\selena\jacqui\orders\Mt Hawley(insurance)

Plaintiff in the *Kings County Supreme Court matter of Vineda Cooke v. Modern Equity Company Inc. et al., under Index No. 35847/07; or in the alternative*

(b) Issuing a Temporary Restraining Order to stop Defendant from disclaiming insurance coverage and compelling Defendant to defend Plaintiff while this declaratory judgment action is pending; and

(c) Granting Plaintiff such other and further relief as this court may deem just and proper.

**SUFFICIENT CAUSE** being alleged, therefore, it is further ordered that a copy

of this Order to Show Cause together with the papers upon which it is granted be ~~properly~~ served *together with a summons & complaint upon* ~~upon~~: (1) the Defendant, *Mt. Hawley Insurance Company;* (2) the attorneys for Vineda Cooke

in the Kings County Supreme Court proceeding under Index No. 35847/07 at *Smith & as notice of this application upon Laquercia, LLP, 291 Broadway, 16th Floor, New York, New York 10007;* and (3) the attorneys

for Time Warner Cable, Inc. in the Kings County Supreme Court proceeding under Index

35847/07 at *Newman Fitch Altheim Myers, P.C., 14 Wall Street, 22nd Floor, New York, New as notice of this application, York 1000*$5_{,}$ be deemed sufficient if served by **personal service** on or before **August** *11* $^{th}$,

2008;

**IT IS FURTHER ORDERED,** that any and all opposition must be served *via Hand Delivery* on Plaintiff's attorney, *Sperber Denenberg & Kahan, P.C., 48 West 37th Street, 16th Floor, New York, New York 10018,* so as to be received at least three (3) business days prior to

the return date.

*ENTER:*

_____
                                    J.S.C.

w:\selena\jacqui\orders\Mt Hawley(insurance)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ X

MODERN EQUITY COMPANY, INC.,

                                *Plaintiff,*

    - against -

MT. HAWLEY INSURANCE COMPANY,

                               *Defendant.*

━━━━━━━━━━━━━━━━━━━━━━━━━━━━ X

*Index No.:*       /08

**AFFIRMATION**

    ***JACQUELINE HANDEL HARBOUR,*** an attorney duly authorized to practice law in the courts of the State of New York hereby affirms the following pursuant to CPLR §2106.

    1.    I am a member of the law offices of ***Sperber Denenberg & Kahan, P.C.,*** attorney for ***Modern Equity Company, Inc.,*** **Plaintiff** herein and, as such, I am fully familiar with the facts set forth herein.

    2.    I submit this affirmation in support to the Plaintiff's Order to Show Cause that seeks an order that declares Plaintiff as covered by Defendant's insurance policy and compels Defendant to defend, cover and indemnify the Plaintiff in the Kings County Supreme Court matter of ***Vineda Cooke v. Modern Equity Company, Inc. & Time Warner Cable Inc.,*** Index Number 35487/07, or in the alternative, issuing a Temporary Restraining Order to stop Defendant from disclaiming insurance coverage at this juncture and compelling Defendant to defend the Kings County case while this declaratory judgment action is pending.

    3.    For the reasons stated herein, the Plaintiff's Order to Show Cause should be granted in its entirety.

*w:\selena\jacqui\orders\Mt Hawley(insurance)*

4.     Plaintiff, Modern Equity Company, Inc., owns and manages the property located at **200-204 West 70th Street, New York, New York** *(hereinafter the "subject property")*. The Plaintiff acquired ownership of the property on October 16, 1952. *(A copy of the deed for the subject property is attached as Exhibit "A," and is made a party hereof.)*

5.     Plaintiff contracted with Defendant, Mt. Hawley Insurance Co. for insurance for the subject property.   Defendant subsequently issued a Commercial General Liability Coverage Insurance Policy No. MGL0142595 to Plaintiff effective from June 30, 2005 to June 30, 2006, which insured the subject property.  The said policy, among other things, provided that the Defendant would indemnify the Plaintiff against legal liability resulting from bodily injury or property damage to others emanating from the operations of the premises.  *(A copy of the said insurance policy between the parties is attached as Exhibit "B," and made a part hereof.)*

6.     Plaintiff was subsequently served with a Notice of Motion for a default dated June 17, 2008,  for failing to answer a Summons and Complaint verified on September 17, 2007, where upon Vineda Cooke commenced an action against Plaintiff and Time Warner Cable Inc. for a slip and fall that allegedly occurred on April 3, 2006, on the public sidewalk of West 70th Street, New York, New York, between Amsterdam Avenue and West End Avenue, allegedly in front of the premises owned by Plaintiff, 222 Amsterdam Avenue, New York, New York. This action is venued in the County of Kings and carries Index No. 35487/07. *(A copy of the Motion with the underlying Summons and Complaint is attached as Exhibit "C," and made a part hereof.)*

*w:\selena\jacqui\orders\Mt Hawley(insurance)*

7.    The receipt of the said Motion for default by first class mail was the first time the Plaintiff became aware of and had notice of the alleged incident or lawsuit concerning Vineda Cooke. *(See affidavit of Matthew Kaplan.)*

8.    Defendant provided insurance for Plaintiff during the time of the occurrence at issue. *(See Exhibit "B.")*

9.    In full compliance with said policy between the parties, Plaintiff promptly notified Defendant of said incident and lawsuit on June 23, 2008, and requested Defendant to defend and cover said lawsuit. *(See Affidavit of Matthew Kaplan and letter attached as Exhibits "D" and "E.")*

10.    Specifically, Plaintiff fully complied with Section IV(2) of said Insurance Policy, titled "Commercial General Liability Conditions" by promptly notifying the Defendant of the lawsuit and incident upon first learning of same.

11.    Nonetheless, even though Plaintiff had fully complied with the terms of said policy, Defendant, without a proper basis or justification, refused to cover and defend Plaintiff in the Kings County Supreme Court proceeding under Index No. 35487/07 within a letter dated July 3, 2008. *(A copy of the Defendant's letter dated July 3, 2008, notifying Plaintiff of its refusal to defend and indemnify is attached as Exhibit "E," and made a part hereof.)*

12.    Plaintiff consequently retained our law firm and we immediately notified the Defendant that its refusal to defend, cover and indemnify Plaintiff was unjustified, inappropriate and improper and that pursuant to the terms of the insurance policy, Defendant was obligated to defend, cover and indemnify Plaintiff. *(A copy of the letter sent by Sperber*

*Denenberg & Kahan, P.C. to Defendant dated July 8, 2008, is attached as Exhibit "F," and made a part hereof.)*

13.     Defendant responded by still refusing to cover and defend Plaintiff by claiming that the failure to have an updated address with the Secretary of State is grounds for them to claim that notice to them was unreasonable. *(A copy of said letter from Defendant dated July 21, 2008, is attached as Exhibit "G," and made a part hereof.)* The purported basis for Defendant's disclaimer of coverage is alleged lack of timely notice of the lawsuit. However, as explained above, the Plaintiff only first learned of the incident when they received the Notice of Motion for a default for failing to answer the Summons and Complaint in the said Kings County Supreme Court matter under Index No. 35487/07. *(See Affidavit of Matthew Kaplan.)* Upon receipt of the Motion, Plaintiff, in full adherence of the terms of the policy, notified Defendant of the alleged incident and lawsuit. Nevertheless, the outdated address listed with the Secretary of State has no bearing on Defendant defending and indemnifying Plaintiff since this law firm entered into an agreement with the Plaintiff in the Kings County case to adjourn the motion for a default for the Defendant to serve and file an answer. *(See Exhibit "H.")*

14.     Defendant acknowledges notice of the claim within days of the Notice of Motion for a default being served within its July 3, 2008 letter.

15.     As such, with there being no adequate basis for the Defendant's disclaimer of coverage and its refusal to defend and indemnify Plaintiff in the Kings County Supreme Court matter under Index Number 35487/07, it is thus respectfully requested that this Court issue an order that declares Plaintiff covered by Defendant's insurance policy and compelling Defendant to defend, indemnify and cover Plaintiff in the said Kings County Supreme Court matter under Index No. 35487/07, or in the alternative, issue a Temporary Restraining Order to stop

*w:\selena\jacqui\orders\Mt Hawley(insurance)*

Defendant from disclaiming insurance coverage and compelling Defendant to defend Plaintiff while the declaratory judgment action is pending in order to prevent any irreparable harm to Plaintiff.

16.    The Court is referred to the accompanying *Memorandum of Law.*

*No Prior Application For This Or Similar Relief Has Been Previously Requested.*

*WHEREFORE,* for all reasons stated above, it is respectfully requested that this Court grant Plaintiff's motion in its entirety; together with such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          July 29, 2008

JACQUELINE HANDEL-HARBOUR

*w:\selena\jacqui\orders\Mt Hawley(insurance)*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ X

MODERN EQUITY COMPANY, INC.,

                            *Plaintiff,*

    - against -

MT. HAWLEY INSURANCE COMPANY,

                           *Defendant.*

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ X

*Index No.:*         */08*

**AFFIDAVIT**

*STATE OF NEW YORK*     )
                           )ss.:
*COUNTY OF NEW YORK*   )

        *MATTHEW KAPLAN,* being duly sworn hereby deposes and says as follows:

            1.      I am an officer of Modern Equity Company Inc. and as such I am fully familiar with the facts set forth herein. I offer this affirmation in support to the Plaintiff's Order to Show Cause that seeks an order that declares Plaintiff as covered by Defendant's insurance policy and compels Defendant to defend, cover and indemnify the Plaintiff in the Kings County Supreme Court matter of *__Vineda Cooke v. Modern Equity Company, Inc. & Time Warner Cable Inc.,__* Index Number 35487/07, or in the alternative, issuing a Temporary Restraining Order to stop Defendant from disclaiming insurance coverage and compelling Defendant to defend the Kings County case while this declaratory judgment action is pending.

### *FACTS*

            2.      Plaintiff, Modern Equity Company, Inc., owns and manages the property located at **200-204 West 70th Street, New York, New York** *(hereinafter the "subject property").* The Plaintiff acquired ownership of the property on October 16, 1952. *(A copy of the deed for the subject property is attached as Exhibit "A," and is made a party hereof.)*

w:\selena\jacqui\orders\Mt Hawley(insurance)

3.    Plaintiff contracted with Defendant, Mt. Hawley Insurance Co. for insurance for the subject property. Defendant subsequently issued a Commercial General Liability Coverage Insurance Policy No. MGL0142595 to Plaintiff effective from June 30, 2005 to June 30, 2006, which insured the subject property. The said policy, among other things, provided that the Defendant would indemnify the Plaintiff against legal liability resulting from bodily injury or property damage to others emanating from the operations of the premises. *(A copy of the said insurance policy between the parties is attached as Exhibit "B," and made a part hereof.)*

4.    Plaintiff was subsequently served with a Notice of Motion for a default dated June 17, 2008, for failing to answer a Summons and Complaint verified on September 17, 2007, where upon Vineda Cooke commenced an action against Plaintiff and Time Warner Cable Inc. for a slip and fall that allegedly occurred on April 3, 2006, on the public sidewalk of West 70th Street, New York, New York, between Amsterdam Avenue and West End Avenue, allegedly in front of the premises owned by Plaintiff, 222 Amsterdam Avenue, New York, New York. This action is venued in the County of Kings and carries Index No. 35487/07. *(A copy of the Motion with the underlying Summons and Complaint is attached as Exhibit "C," and made a part hereof.)*

5.    The receipt of the said Motion for default by first class mail was the first time the Plaintiff became aware of and had notice of the alleged incident or lawsuit concerning Vineda Cooke. *(See affidavit of Matthew Kaplan.)* Vineda Cooke is neither a tenant at the Plaintiff's building nor did Plaintiff receive any sort of notification from her prior to the lawsuit with respect to her alleged injury.

6.    Inasmuch as Defendant provided insurance for Plaintiff during the time of the occurrence at issue, it expected Defendant to defend it in the lawsuit. *(See Exhibit "B.")*

w:\selena\jacqui\orders\Mt Hawley(insurance)

7.     In full compliance with said policy between the parties, I promptly notified Defendant on or about June 23, 2008, of said incident and lawsuit and requested Defendant to defend and cover said lawsuit. *(See letter attached as Exhibit "D.")*

8.     Even though Plaintiff had fully complied with the terms of said policy, Defendant, without a proper basis or justification, refused to cover and defend Plaintiff in the Kings County Supreme Court proceeding under Index No. 35487/07 within a letter dated July 3, 2008. *(A copy of the Defendant's letter dated July 3, 2008, notifying Plaintiff of its refusal to defend and indemnify is attached as Exhibit "E," and made a part hereof.)*

9.     Defendant advised Plaintiff's attorneys that the basis for their refusal to cover and defend Plaintiff was the failure to have an updated address with the Secretary of State which led to the Plaintiff's default in the underlying action. *(A copy of said letter from Defendant dated July 21, 2008, is attached as Exhibit "G," and made a part hereof.)* Such basis is completely irrational since the default will be vacated as explained to the Defendant with Plaintiff being provided an extension of time to answer therein. Moreover I honestly was not aware that an outdated address was on file with the Secretary of State, in that I never received any documentation to update same. When documents are served upon us we receive them at the building therefore it was never a problem in the past. Moreover, a proper address is listed for service of Plaintiff on the DHPD online website. Additionally, service at the building owned by Plaintiff was not made by Vineda Cooke in the compatible case until service of the Notice of Default.

10.     Since the Plaintiff only first learned of the incident when they received the Notice of Motion for a default for failing to answer the Summons and Complaint in the said

w:\selena\jacqui\orders\Mt Hawley(insurance)

Kings County Supreme Court matter under Index No. 35487/07 by first class mail, *(see Exhibit "I")*, it cannot be claimed that the Defendant was not notified as soon as practicable, it was notified as soon as Plaintiff became aware of both the incident and lawsuit.

11.    Defendant acknowledges notice of the claim within days of the Notice of Motion for a default being served within its July 3, 2008 letter.

12.    As such, with there being no adequate basis for the Defendant's disclaimer of coverage and its refusal to defend and indemnify Plaintiff in the Kings County Supreme Court matter under Index Number 35487/07, it is thus respectfully requested that this Court grant the within motion.

*No Prior Application For This Or Similar Relief Has Been Previously Requested.*

_____
**MATTHEW KAPLAN**

Sworn to before me this
24 day of **July 2008**.

_____
**NOTARY PUBLIC**

MITCHEL L. KAPLAN
Notary Public, State of New York
No. 4846-53
Qualified in New York County
Commission Expires Dec. 19, 2010

w:\selena\jacqui\orders\Mt Hawley(insurance)

# MEMORANDUM OF LAW

# SUPREME COURT OF THE STATE OF NEW YORK
# COUNTY OF NEW YORK

### Index No.:            /08

MODERN EQUITY COMPANY, INC.,

*Plaintiff,*

*- against -*

MT. HAWLEY INSURANCE CO.,

*Defendant.*

# *PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT TO A DECLARATION IN ITS FAVOR*

*Respectfully submitted,*

*SPERBER DENENBERG & KAHAN, P.C.*

*By: Jacqueline Handel-Harbour, Esq.*
*Attorneys for Plaintiffs*
*48 West 37th Street, 16th Floor*
*New York, New York 10018*
*Telephone: (917) 351-1335*
*Facsimile: (917) 351-1303*

## *ISSUES PRESENTED*

The issue on the motion is whether Plaintiff - the insured - gave timely notice to Defendant - their carrier of the SLIP AND FALL that allegedly occurred outside of its building, when it was not notified of the incident or lawsuit until receipt of a Notice of Motion for a Default against it.

It is Plaintiff's position that it provided notice when it was notified of a claim stemming from the slip and fall and that prior to that time it lacked knowledge of the incident.

The fact that the Secretary of State maintained an outdated address for the Plaintiff herein leading to the motion for a default in the compatible case that the Plaintiff seeks coverage for is irrelevant since the Plaintiff therein agreed to vacate the default upon Modern Equities serving and filing an answer.

## *ARGUMENT*

### *POINT I*

### *REASONABLE NOTICE WAS AFFORDED*
### *TO DEFENDANT UNDER THE CIRCUMSTANCES*

Coverage under the insurance policy at bar provides, in relevant part:

"2. Duties In The Event of Occurrence, Offense, Claim or Suit.

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim."

By including these terms and conditions, the policy makes timely notice a condition precedent to

coverage. It is well settled that:

> "[w]here a policy of liability insurance requires that notice of an occurrence be given as soon as practicable, such notice must be accorded to the carrier within a reasonable period of time. The insured's failure to satisfy the notice requirement constitutes a failure to comply with a condition precedent which, as a matter of law, vitiates the contract . . . [T]he insured bears the burden of establishing the reasonableness of the proffered excuse."

*Great Canal Realty Corp. v. Seneca Ins. Co. Inc.,* 5 N.Y.3d 742, 743-744 (2005).

Undeniably, compliance with the notice provision of an insurance policy is a

condition precedent to coverage. *New York Cent Mut. Fire Ins. v. Riley,* 234 A.D.2d 275, 650

N.Y.S.2d 308 (2nd Dept. 1996).

When, as here, "a liability insurance policy requires that notice of an occurrence be

given 'as soon as practicable'; such notice must be accorded the carrier within a reasonable period

of time." *Tower Ins. Co. of New York v. Lin Hsin Long Co.,* 2008 WL 895747 (App. Div., 1st

Dept., April 3, 2008). In determining what constitutes a reasonable time in which to give notice depends upon the facts and circumstances of each particular case. The range and time limitations vary.

"The duty to give notice arises when, from the information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement. *Paramount Ins. Co. v. Rosedale*, 293 A.D.2d 235, 239-240, 743 N.Y.S.2d 59 (2002).

The obligation to provide notice is triggered when the "circumstances known to the insured at the time would have    suggested to a reasonable person the possibility of a claim." *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.* , 822 F.2d 267, 272 (2nd Cir. 1987). The circumstances known to the insured is the key question, not the actual facts in order to determine coverage at bar.

The issue of reasonableness is a "legal question for the court . . . rather than an issue for the *trier of fact*," where there is no excuse or mitigating factor. *Tower Ins. Co. of New York v. Lin Hsin Long Co.*, *supra*. It is only when the insured has not offered a valid excuse for the delay that a finding of whether notice was reasonable or not can be made on a summary judgment motion as a matter of law. *State of N.Y. v. Blank*, 27 F.3d 783, 793 (2nd Cir. 1994).

Therefore, absent a valid excuse, the failure to comply with the notice requirements vitiates coverage. *American Home Assur. Co. v. International Inc. Co.*, 90 N.Y.2d 433, 661 N.Y.S.2d 584, 684 N.E.2d 14 (1997). A reasonable belief in non-liability will excuse the delay in giving notice, but the insured has the burden of showing the reasonableness of such excuse. *White by White v. City of New York*, 81 N.Y.2d 955, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993).

The reasonableness of the belief, however, does not turn on "whether the insured believes he will ultimately be found liable for the injury, but whether he has a reasonable basis for a belief that no claim will be asserted against him." *SSBSS Realty Corp. v. Pub. Ser. Mutual Ins. Co.*, 253 A.D.2d 583 (1st Dept. 1998).

It is quite clear that Plaintiff was not even aware of the incident. No prior notice was sent by the alleged injured party nor were there any witnesses to the Plaintiff's knowledge of the incident.

In *Marinello v. Dryden Mutual Insur. Co. Inc.*, 237 A.D.2d 795, 655 N.Y.S.2d 156 (3rd Dept. 1997), a bar brawl between patrons that lead to an injury resulted in a lawsuit. It was not until six (6) months after the altercation that the insured notified its insurance, even though an employee witnessed the fight. Since there was no indication that plaintiff condoned the assault or played a part in the fight, "plaintiff had no reason to believe that he would be held liable," thus the case was governed by "the general rule that reasonableness of plaintiff's alleged good faith belief of non-liability is a question of fact to be resolved by a jury."

To reiterate, a delay will be excused if the insured "in good faith reasonably believes there is no policy coverage or that the insured was not liable on the main action." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141 (2d Cir. 1995).

In *Sparacino*, a union member, picketing at a job site, threw a rock through a bus window striking and severely injuring someone. The union did not report the incident to its insurance company. Subsequently, the union member pled guilty to assault. A year after the incident, the injured person sued the union for negligence and the union promptly notified the insurance company of the suit. However, the insurance company disclaimed coverage on the

grounds that the union should have notified it at the time of the incident, not when the complaints were served. The Second Department disagreed, reversed the District Court and held as follows:

> "Accordingly, given that the Union's officers are nonlawyers with little expertise in tort liability, we conclude that it was reasonable for them to believe that they could not be held liable for an intentional, and criminal, assault committed by a union member ... and indeed the Union notified the insurer as soon as it learned that Mauney, the injured party, had named the Union as a defendant in his lawsuit. In light of all the circumstances, we find that the Union's delay in providing notice to Pawtucket of the rock-throwing incident is excused by the Union's reasonable belief in noncoverage under the policy and nonliability for the incident."

In the case at bar, Defendant argues that it properly disclaimed coverage because Plaintiff was untimely in notifying the insurance company of the claims as soon as practicable after the incident and failed to timely advise them of the lawsuit. However, as the cases above demonstrate, Plaintiff, in good faith, could not have notified Defendant of an incident it was itself not made aware of and certainly the issue of an outdated address with the Secretary of State has no impact on the defense of this lawsuit when the default will be vacated upon Modern Equities serving and filing an answer.[i]

---

[i]

When a corporate defendant establishes that it did not receive actual notice of the complaint in time to defend, despite service upon the Secretary of State and it has a meritorious defense, relief from a default may be obtained. *Kavourias v. Big Six Pharmacy Inc.,* 692 N.Y.S.2d 171, 262 A.D.2d 456 (N.Y. A.D., 2d Dept. 1999); Absent some indication that the corporation has deliberately attempted to avoid service, courts are fairly generous in opening up default judgments where service was made through the Secretary of State. *See: Stein v. A. Matarasso & Co.,* 143 A.D.2d 825, 533 N.Y.S.2d 126; *Barillari v. 511 Main Street Corp.,* 216 A.D.2d 859, 629 N.Y.S.2d 365 *(the Secretary of State mailed a copy of the Summons and Complaint to the address of defendant's former attorney, an address that had not been valid for some time, however, since the failure to advise the Secretary of State was not deliberate, time to answer should be granted).*

## *CONCLUSION*

Based upon the aforesaid the Plaintiff's motion should be granted.

Dated:   New York, New York
         July 29, 2008

Respectfully submitted,

SPERBER DENENBERG & KAHAN, P.C.

*By: Jacqueline Handel-Harbour, Esq.*
*Attorneys for Plaintiffs*
**48 West 37th Street, 16th Floor**
**New York, New York 10018**
**(917) 351-1335, ext. 26**

w:\selena\jacqui\orders\mthawley.mol       **–6–**





LIBER 4804 PAGE 608

THIS INDENTURE, made the 16th day of October ..... fifty two
BETWEEN  CHALFONTE REALTY CORP., a domestic corporation, having its
principal office at 601 West 140th Street, Borough of Manhattan,
City of New York,

party of the first part and ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~
~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~
~~XXXXXXXXXXXXXXXXXXXXX~~
MODERN EQUITY COMPANY INC., A DOMESTIC CORPORATION, HAVING ITS PRIN-
CIPAL OFFICE AT 100 WEST 72ND STREET, BOROUGH OF MANHATTAN, CITY OF
NEW YORK,

party of the second part,

WITNESSETH, that the party of the first part in consideration of other good and valuable

consideration and the sum of ONE HUNDRED - - - ($100.00) - - - dollars,

lawful money of the United States,  to it  paid

by the party of the second part, does hereby grant and release unto the party of the second part,

its successors  and assigns forever,

ALL that lot or parcel of land, with the buildings and improvements
thereon, situate, lying and being in the Borough of Manhattan, City,
County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly
side of 70th Street with the westerly side of Amsterdam Avenue, run-
ning thence southerly, along the westerly side of Amsterdam Avenue
one hundred feet, five inches to the center line of the block; thence
westerly along the center line of the block and parallel with the
said southerly side of 70th Street, one hundred and twenty-five
feet; thence northerly, parallel with the westerly side of Amsterdam
Avenue, one hundred feet, five inches to the southerly side of West
70th Street; and thence running easterly, along the said southerly
side of 70th Street one hundred and twenty-five feet to the point
or place of beginning.

SAID PREMISES being known as 200-4 West 70th Street.

TOGETHER with all the right, title and interest of the party of the
first part of, in and to the streets lying in front of and adjacent
to the above described premises to the center lines thereof.

TOGETHER with all the right, title and interest of the party of the
first part in and to any and all buildings, structures, improvements,
fixtures, furniture, furnishings and articles of personal property
whether to be used in the operation of said premises, as a par-
tially furnished hotel with stores, together with any and all build-
ings, structures, improvements, fixtures and articles of personal
property of any kind constructed or placed upon said premises or
on any part thereof, including all partitions, elevators, engines,
motors, dynamos, boilers, furnaces, heating, refrigerating, plumbing,
gas and electric fixtures, vacuum cleaning systems, sprinkler sys-
tems or other fire-prevention or extinguishing apparatus and materi-
als, housekeeping and cleaning materials, stoves and ranges, awnings,
screens, window shades, linens, furniture and furnishings, whether
herein enumerated or not, constituting a part of the plant thereof
and belonging to the owner of the premises, and any and all furnish-
ings, furniture and all other equipment and machinery, appliances,
fixtures and fixtures of every kind in, or used in the operation of
any building now standing on said premises, together with any and
all replacements thereof and additions thereto, including any per-
sonal property either on or off the premises.

LIBER **4804** PAGE **669**

SUBJECT, also, to the rights of tenants in possession.

SUBJECT TO AN EXISTING FIRST MORTGAGE NOW REDUCED TO $507,885.15 AND ACCRUED INTEREST, AND TO A PURCHASE MONEY MORTGAGE IN THE SUM OF $492,114.57, EXECUTED BY THE PARTY OF THE SECOND PART TO THE PARTY OF THE FIRST PART, AND INTENDED TO BE RECORDED SIMULTANEOUSLY HEREWITH.

**TOGETHER** with all right, title and interest, if any, of the party of the first part, in and to any streets and roads abutting the above described premises to the center lines thereof.

**TOGETHER** with the appurtenances and all the estate and rights of the party of the first part in and to said premises.

**TO HAVE AND TO HOLD** the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

LIBER 4804 PAGE 670

**AND** the party of the first part...

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF

CHALFONTE REALTY CORP.

BY: *Minnie Smith*
President

STATE OF NEW YORK, COUNTY OF

On the ___ day of ___ nineteen hundred and ___

before me personally came

to me known to be the individual ___ described in and who executed the foregoing instrument, and acknowledged ___





CON 4804 PAGE 668

THIS INDENTURE, made the 16th day of October, one thousand nine fifty two, BETWEEN CHALFONTE REALTY CORP., a domestic corporation, having its principal office at 601 West 110th Street, Borough of Manhattan, City of New York,

party of the first part, and XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXX MODERN EQUITY COMPANY INC., A DOMESTIC CORPORATION, HAVING ITS PRINCIPAL OFFICE AT 100 WEST 72ND STREET, BOROUGH OF MANHATTAN, CITY OF NEW YORK,

party of the second part,

WITNESSETH, that the party of the first part in consideration of other good and valuable consideration and the sum of ONE HUNDRED - - - ($100.00) - - - dollars, lawful money of the United States, to it paid by the party of the second part, does hereby grant and release unto the party of the second part,

its successors and assigns forever,

ALL that lot or parcel of land, with the buildings and improvements thereon, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of 70th Street with the westerly side of Amsterdam Avenue, running thence southerly, along the westerly side of Amsterdam Avenue one hundred feet, five inches to the center line of the block; thence westerly along the center line of the block and parallel with the said northerly side of 70th Street, one hundred and twenty-five feet; thence northerly, parallel with the westerly side of Amsterdam Avenue, one hundred feet, five inches to the southerly side of West 70th Street; and thence running easterly, along the said southerly side of 70th Street one hundred and twenty-five feet to the point or place of beginning.

SAID PREMISES being known as 200-4 West 70th Street.

TOGETHER with all the right, title and interest of the party of the first part of, in and to the streets lying in front of and adjacent to the above described premises to the center lines thereof.

TOGETHER with all the right, title and interest of the party of the first part in and to any and all buildings, structures, improvements, fixtures, furniture, furnishings and articles of personal property thereto be erected in the operation of said premises, and especially furnished Hotel with stores, together with any and all buildings, structures, improvements, fixtures and articles of personal property at any time constructed or placed upon said premises or on any part thereof, including all partitions, elevators, engines, motors, dynamos, boilers, furnaces, heating, refrigerating, plumbing, gas and electric fixtures, vacuum cleaning systems, sprinkler systems or other fire-prevention or extinguishing apparatus and materials, housekeeping and cleaning materials, stoves and ranges, awnings, screens, window shades, linens, furniture and furnishings, whether herein enumerated or not, constituting a part of the plant thereof and belonging to the owner of the premises, and any and all furnishings, furniture and all other equipment and machinery, appliances, fittings and fixtures of every kind in, or used in the operation of, any building now standing on said premises, together with any and all replacements thereof and additions thereto, including any personal property either on or off the premises.

4804 669

SUBJECT, also, to the rights of tenants in possession.

SUBJECT TO AN EXISTING FIRST MORTGAGE NOW REDUCED TO $507,885.13 AND
ACCRUED INTEREST, AND TO A PURCHASE MONEY MORTGAGE IN THE SUM OF
$192,114.97, EXECUTED BY THE PARTY OF THE SECOND PART TO THE PARTY
OF THE FIRST PART, AND INTENDED TO BE RECORDED SIMULTANEOUSLY HEREWITH.

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof;

**TOGETHER** with the appurtenances and all the estate and rights of the party of the first part in and to said premises;

**TO HAVE AND TO HOLD** the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.





City Register

CRG-6-60M-701825-86C(88)

N - 18230

STATE OF NEW YORK, }
COUNTY OF   NEW YORK }

I hereby certify that the annexed is a true copy of an instrument made by .................
..... *CHALFONTE  REALTY  CORP* ............................................. *to*
..... *MODERN  EQUITY  COMPANY  INC.* .............................
recorded in the office of the New York City Register ....... *NEW YORK* ....... County on the *22*
day of *OCTOBER* 19 *52* at *2:02* P. M, in Section *4* Block *1161*
(Liber)Reel *4804* of *DEED* Page *668*

In Testimony Whereof, I have hereunto subscribed my name and affixed my official seal,
this *31* day of *JANUARY* 19 *92*.

*Joy A. Baltsen*
CITY REGISTER

*City Register*

# EXHIBIT "B"

**Mt. Hawley Insurance Company**

9025 North Lindbergh Drive, Peoria, IL 61615    Phone: (309) 692-1000

## COMMERCIAL GENERAL LIABILITY POLICY

### DECLARATIONS

**Renewal of** MGL0137561

**Policy No.** **MGL0142595**

Named Insured and Mailing Address
**Melvin Kaplan**
**(See Schedule of Named Insureds)**
**170 W. 74th Street**
**New York, NY 10023**

Producer
**10566 Kerwick & Curran, Inc.**
**Suite #302**
**150 White Plains Road**
**Tarrytown, NY  10591**



Policy Period: From **06/30/2005** to **06/30/2006** at 12:01 A.M. Standard Time at your mailing address shown above.

In return for the payment of premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| LIMITS OF INSURANCE | | | |
|---|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 | |
| Products - Completed Operations Aggregate Limit | $ | 1,000,000 | |
| Personal and Advertising Injury Limit | $ | 1,000,000 | |
| Each Occurrence Limit | $ | 1,000,000 | |
| Damage To Premises Rented To You Limit | $ | 50,000 | |
| Medical Expense Limit | $ | 5,000 | Any One Person |

### DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES

Form of Business: ☐ Individual  ☐ Joint Venture  ☐ Partnership  ☒ Organization (Other than Partnership or Joint Venture)

Business Description: **Real Estate Property Owner**

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

### PREMIUM

| Classification | Code No. | Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| Apartments | 60010 | 388 Units | $150.00 | $58,200 |
| Mercantile-Shopping/Parking | 67635 | 403,000 Sq. Ft. | $150.00 | $60,450 |
| Hired & Non Owned Auto | 661199 | Flat | N/A | $2,500 |

**Minimum Premium: $31,788**

**Total Advance Premium $ 127,150**    (Payable at inception)

### FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
**See Supplemental Declarations, RII110A**
**See Schedule of Endorsements**

Countersigned: _____     By _____
                                                                      Authorized Representative

THESE ENDORSEMENTS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND
ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material of Insurance Services Office Inc., with its permission. Copyright, Insurance Services Office, Inc., 1982, 1984

**Mt. Hawley Insurance Company**
9025 North Lindbergh Drive, Peoria, IL 61615

## SUPPLEMENTAL DECLARATIONS

| Policy No. MGL0142595 |
|---|

| Named Insured and Mailing Address |
|---|
| Melvin Kaplan<br>(See Schedule of Named Insureds)<br>170 W. 74th Street<br>New York, NY 10023 |

You should know that coverage provided for losses caused by acts of terrorism is partially reimbursed by the United States under a formula whereby the United States pays 90% of covered terrorism losses exceeding a prescribed deductible to the insurance company providing for the coverage.

|  | Premium Basis/Rate | Advance Premium |
|---|---|---|
| Coverage for Certified Acts of Terrorism | Flat Charge | $ 6,000 |

RIL 110A (01/03)

Producer

Policy No. MGL0142595                                                    Mt. Hawley Insurance Company

## Commercial Coverage Schedule of Endorsements

The following is a listing of endorsements by Form Number and Title that form a part of the policy at issue.

| Form Number | Title |
|---|---|
| CGL-340(02/99) | Named Insured and Location Supp. Schedule, Page 1 |
| CG-0001(12/04) | CGL Coverage Form (Occurrence) |
| IL-0021(07/02) | Nuclear Energy Liability Exclusion Endorsement |
| IL-0017(11/98) | Common Policy Conditions |
| CG-2144(07/98) | Limitation of Cov to Designated Premises or Project |
| CG-2504(03/97) | Aggregate Limits of Insurance per Location |
| CGL-251(09/03) | Deductible Liability Insurance |
| CG-2147(07/98) | Exclusion - Employment Related Practices |
| CG-2187(05/04) | Conditional Exclusion of Terrorism |
| CGL-102B(11/04) | Tenants and Contractors - Conditions of Coverage |
| CGL-211(03/03) | Amendment of Other Insurance Excess Provision |
| CGL-212(04/98) | Absolute Exclusion-Asbestos |
| CGL-213(04/98) | Absolute Exclusion-Lead |
| CGL-335(06/03) | Absolute Exclusion - Pollution |
| CGL-350(03/01) | Breach of Contract Exclusion |
| CGL-351(03/01)H | Premium Computation Endorsement |
| CGL-358(04/03) | Discrimination Exclusion |
| CGL-362(06/01) | Hired Auto and Non-owned Auto Liability |
| CGL-365(06/02) | Mold, Mildew and Fungus Exclusion |
| CGL-366(02/05) | Continuous or Progressive Injury and Damage Exclusion |
| CGL-368(03/05) | Excl-Products-Completed Ops Hazard(Converted Buildings) |
| CGL-369(04/03) | Exclusion - Communicable Disease |
| CGL-372(10/03) | Absolute Silica Exclusion |
| RIL-099(01/01) | Service of Suit Endorsement |
| RIL-2126A(12/02) | Limited Terrorism Exclusion (Other Than Certified Acts) |
| ILF-0001(01/01) | Signature Page |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.

RIL 100 (06/98)                          **Producer**                          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NAMED INSURED AND LOCATION
## SUPPLEMENTARY SCHEDULE

The Declarations includes the following as

Melvin Kaplan

1. Modern Equity Co., Inc.
   Chalfonte Realty, Corp.
   200-204 West 70th Street, New York, NY
   Melvin Kaplan, Mathew Kaplan & Mitchell Kaplan, Managers and Owners
   Lilli Anton Ohmer, Owner

2. Kaplan Marin Associates
   170 West 74th Street, New York, NY
   Melvin Kaplan, Dena Kaplan & Sheila Marin, Owners
   Mitchell Kaplan, Mathew Kaplan, Managers

3. Royalton Styles Corp.
   2 East Broadway, New York, NY
   Melvin Kaplan, Mathew Kaplan & Mitchell Kaplan, Owners and Managers

4. 4040 Broadway Realty Corp
   4040 Broadway, New York, NY
   Melvin Kaplan, Mathew Kaplan & Mitchell Kaplan, Owners and Managers

5. Park 101 Company
   101 West 80th Street, New York, NY
   Melvin Kaplan, Dena Kaplan & Sheila Marin, Owners
   Barrett Broyde, Michael Broyde and Linda Haramari, Owners
   Mitchell Kaplan & Mathew Kaplan, Managers.

6. Mid Hudson Associates
   2585 South Road, Poughkeepsie, NY
   Melvin Kaplan, Dena Kaplan & Shiela Marin, Owners
   Barrett Broyde, Michael Broyde & Linda Haramari, Owners
   Michell Kaplan & Mathew Kaplan, Managers

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V – DEFINITIONS.**

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE;** and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **COVERAGES A or B** or medical expenses under **COVERAGE C.**

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.**

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of **SECTION II – WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

© ISO Properties, Inc., 2003

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

© ISO Properties, Inc., 2003

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if

the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

© ISO Properties, Inc., 2003

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

   (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment."

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage," however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to **Damage To Premises Rented To You** as described in **SECTION III – LIMITS OF INSURANCE.**

© ISO Properties, Inc., 2003

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  "Your product";

(2)  "Your work"; or

(3)  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

**p.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III – LIMITS OF INSURANCE.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)  The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

(2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under **COVERAGES A or B** or medical expenses under **COVERAGE C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

    © ISO Properties, Inc., 2003

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

**o. War**

"Personal and advertising injury," however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers."

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard."

**g. COVERAGE A Exclusions**

Excluded under **COVERAGE A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    © ISO Properties, Inc., 2003

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

e.  All costs taxed against the insured in the "suit."

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

(1)  Agrees in writing to:

(a)  Cooperate with us in the investigation, settlement or defense of the "suit";

(b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)  Notify any other insurer whose coverage is available to the indemnitee; and

(d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)  Provides us with written authorization to:

(a)  Obtain records and other information related to the "suit"; and

(b)  Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.  The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  © ISO Properties, Inc., 2003

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. COVERAGE A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. COVERAGE B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under **COVERAGE C**;

b. Damages under **COVERAGE A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under **COVERAGE B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under **COVERAGE A**; and

b. Medical expenses under **COVERAGE C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under **COVER-AGE A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under **COVERAGE C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – C( CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or in sured's estate or der this Coverag(

2. **Duties In The E( Or Suit**

   a. You must se( practicable of an occurrence or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

© ISO Properties, Inc., 2003

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGES A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under **COVERAGES A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance Provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the due date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6.  **Representations**

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

7.  **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom claim is made or "suit" is brought.

8.  **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9.  **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b.  Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2.  "Auto" means:

a.  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c.  All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.  "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing; or

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

 © ISO Properties, Inc., 2003

e.  Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2)  Cherry pickers and similar devices used to raise or lower workers;

f.  Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1)  Equipment designed primarily for:

(a)  Snow removal;

(b)  Road maintenance, but not construction or resurfacing; or

(c)  Street cleaning;

(2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.  "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.  The use of another's advertising idea in your "advertisement"; or

g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

15.  "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.  "Products-completed operations hazard":

a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)  When all of the work called for in your contract has been completed.

(b)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.  Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

(2) The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

Policy No. MGL0142595                                    Mt. Hawley Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Premises:**
   **See schedule of locations**

**Project:**
   **None covered**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury," "property damage," "personal and advertising injury" and medical expenses arising out of:

1.   The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.   The project shown in the Schedule.

CG 21 44 07 98              Copyright, Insurance Services Office, Inc., 1997              Page 1 of 1

Policy No. MGL0142595                                              Mt. Hawley Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Designated Location(s): |
| All Locations |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location," and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard," and for medical expenses under COVERAGE C regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits."

3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location." Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

CG 25 04 03 97                    Copyright, Insurance Services Office, Inc., 1996                    Page 1 of 2

Policy No. MGL0142595                                              Mt. Hawley Insurance Company

1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

D. For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

E. The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

Policy No. MGL0142595

Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | Per Occurrence | Per "Unit" or Per Claim |
| Bodily Injury Liability | $ | $ |
| OR Property Damage Liability | $ | $ |
| OR Bodily Injury Liability, Property Damage Liability, Advertising Injury Liability, and Personal Injury Liability Combined | $ | $     5,000 |

[X] Deductible **includes** costs and expenses

[ ] Deductible **excludes** costs and expenses

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT:** (Enter above any limitations on the application of this endorsement. If no limitation is entered, the deductible stated in the Declarations shall apply to damages for all "bodily injury" and "property damage," however caused.)

A. Our obligation under the Bodily Injury Liability, Property Damage Liability, Advertising Injury Liability, and Personal Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible.

B. This insurance is subject to a deductible amount on either a per "occurrence," or per "unit"/per claim basis. Your selected deductible applies to the coverage option and on the basis stated in the Schedule above. The deductible amount stated in the schedule above applies as follows:

   **1. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

c. Under Bodily Injury Liability, Property Damage Liability, Advertising Injury Liability, and Personal Injury Liability Coverage Combined, to all damages because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury," "property damage," "advertising injury," and "personal injury" combined

CGL 251 (09/03)

Page 1 of 2

Policy No. MGL0142595                                    Mt. Hawley Insurance Company

as a result of any one "occurrence," regardless of the number of persons or organizations who sustain damages because of that "occurrence."

A separate deductible shall apply to all damages arising from each occurrence. Where those damages are presented in conjunction with damages arising from a separate covered occurrence, a separate deductible shall apply to each occurrence.

2.  **PER CLAIM/PER "UNIT" BASIS.** If the deductible amount indicated in the Schedule above is on a per claim/per "unit" basis, that deductible amount applies as follows:

    a.  Under Bodily Injury Liability Coverage to all damages sustained by each person or claimant because of "bodily injury";

    b.  Under Property Damage Liability Coverage, to all damages as a result of "property damage" to each individual vehicle, item of personal property or "unit" of real property;

    c.  Under Bodily Injury Liability, Property Damage Liability, Advertising Injury Liability, and Personal Injury Liability Coverage Combined, to all damages because of:

        (1)  "Bodily injury" sustained by each person or claimant;

        (2)  "Property damage" to each individual "unit" or the contents thereof; and

        (3)  "Advertising injury" or "personal injury" sustained by each person, claimant, or organization combined.

A separate deductible shall apply to each claimant or "unit" regardless of whether that claim is presented on an individual basis or in conjunction with other claims, such as in a class action or by a homeowners association on behalf of multiple homeowners.

C.  The terms of this insurance, including those with respect to:

    1.  Our right and duty to defend the insured against any "suits" seeking those damages; and

    2.  Your duties in the event of an "occurrence," claim, or "suit" apply irrespective of the application of the deductible amount.

D.  We may pay any part of all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall reimburse us for such part of the deductible amount as has been paid by us within 30 days.

E.  We may at our sole election upon receipt or notice of any claim or at any time thereafter request you to pay over and deposit with us all or a part of the deductible amount, to be held and applied per the terms of this policy.

    The following additional definition applies: "Unit" means

    (1)  each residential unit in a multi-family structure, such as an apartment or condominium,

    (2)  each separate commercial enterprise in a multi-commercial structure, such as each store or business in a mall or office building,

    (3)  each single-family detached residence, or

    (4)  any other individually owned, rented or leased commercial or residential premises.

All other Terms and Conditions of this Policy remain unchanged.

CGL 251 (09/03)                                          Page 2 of 2

Policy No. MGL0142595                                                      Mt. Hawley Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIRED & NON-OWNED AUTO LIABILITY FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### PREMIUM

| **Cost of Hire** | | |
|---|---|---|
| Estimated Cost of Hire: __Incl.__ | Rate per $100 Cost of Hire: __Incl.__ | Premium: __Incl.__ |
| **Non-Owned** | | |
| Number of Employees: __Incl.__ | Rate per Employee: __Incl.__ | Premium: __Incl.__ |
| | | Total Premium: __Incl.__ |

Various provisions in this coverage form restrict coverage. Read the entire wording carefully to determine rights, duties and what is and is not covered.

Throughout this form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us," and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section V – Definitions**.

**Section I Coverage A.2.g.** is amended as follows:

(6) "Bodily Injury" or "property damage" arising out of the maintenance or use of a "hired auto" or a "non owned auto"

In respect to the insurance provided by this endorsement the following definitions apply:

**A. Hired "Autos":**

Only those "autos" you lease, hire or rent for a period of less than 30 consecutive days. This does not include any "auto" you lease, hire or rent from any of your "employees," partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**B. Non-owned "Autos":**

Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business for a period of less than 30 consecutive days. This includes "autos" owned by your "employees," partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos:**

The following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads while being towed by a covered "auto."

2. "Mobile equipment" while being carried or towed by a covered "auto."

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

Policy No. MGL0142595    Mt. Hawley Insurance Company

c. Servicing;

d. "Loss"; or

e. Destruction

## ADDITIONAL EXCLUSIONS

1. **Long term arrangements**

   "Autos" leased, hired, rented or borrowed for a period of more than 30 consecutive days. There is no coverage for such "autos" at any time, if a written or verbal agreement has been made to lease, hire rent or borrow such "auto" for more than 30 days. In the absence of such a written or verbal agreement, coverage on a leased, hired, rented or borrowed "auto" shall cease on the 31st day of consecutive use.

2. **Leased Drivers**

   "Autos" leased or hired with drivers, are not covered at any time.

## ADDITIONAL CONDITIONS

1. **Limit Of Insurance**

   Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for the total of all damages, resulting from any one "accident" is the Each Occurrence Limit shown in the Declarations.

   The General Aggregate Limit is the most we will pay for the sum of all damages, other than damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" in any policy period.

   The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any other coverage available under this policy.

2. **Two Or More Coverage Forms Or Policies Issued By Us**

   If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident," the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

3. **Other Insurance**

   The insurance provided by this Coverage Form is excess over any other collectible insurance. This condition does not apply to any Coverage Form or policy issued specifically to apply as excess insurance over this Coverage Form.

## ADDITIONAL DEFINITIONS

1. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

2. "Auto" means a land motor vehicle; "trailer' or semi-trailer designed for travel on public roads but does not include "mobile equipment."

3. "Loss" means direct and accidental loss or damage.

4. "Trailer" includes semi-trailer.

CGL 362 (06/01)

Policy No. MGL0142595                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material," "special nuclear material" or "by-product material."

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

IL 00 21 07 02                     © ISO Properties, Inc., 2001                     Page 1 of 2

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device

is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

                    © ISO Properties, Inc., 2001

Policy No. MGL0142595                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

   (1) A person arising out of any:

      (a) Refusal to employ that person;

      (b) Termination of that person's employment; or

      (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

   (1) Whether the insured may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

   (1) A person arising out of any:

      (a) Refusal to employ that person;

      (b) Termination of that person's employment; or

      (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

   (1) Whether the insured may be liable as an employer or in any other capacity; and

   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98                    Copyright, Insurance Services Office, Inc., 1997                    Page 1 of 1

Policy No. MGL0142595                                    Mt. Hawley Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM

## (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. Applicability Of The Provisions Of This Endorsement

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

   (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

   The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism," but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. *Remain applicable unless we notify you of changes in these provisions, in response to federal law.*

CG 21 87 05 04                    © ISO Properties, Inc., 2004                    Page 1 of 3

Policy No. MGL0142595                                    Mt. Hawley Insurance Company

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism," will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism," including action in hindering or defending against an actual or expected incident of "terrorism." "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

Policy No. MGL0142595

Mt. Hawley Insurance Company

c.  Protracted loss of or impairment of the func-
tion of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a
72-hour period and appear to be carried out in con-
cert or to have a related purpose or common leader-
ship will be deemed to be one incident, for the pur-
pose of determining whether the thresholds in
Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and
C.6. describe the threshold used to measure the
magnitude of an incident of "terrorism" and the
circumstances in which the threshold will apply, for
the purpose of determining whether this Exclusion will
apply to that incident. When the Exclusion applies to
an incident of "terrorism," there is no coverage under
this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not
subject to this Exclusion, coverage does not apply to
"any injury or damage" that is otherwise excluded un-
der this Coverage Part or Policy.

© ISO Properties, Inc., 2004

Policy No. MGL0142595                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TENANTS AND CONTRACTORS – CONDITIONS OF COVERAGE

It is hereby understood and agreed that conditions of coverage under this policy are:

1. Insured will require and obtain certificates of insurance with limits of liability equal to or greater than those provided by this policy from all commercial tenants or commercial leasees prior to the occupancy of premises leased from the insured.

2. Insured will be named as additional insured – landlord on all commercial tenant's or commercial leasee's general liability policies.

   Insured will obtain executed hold harmless agreements from all commercial tenants or commercial lessees indemnifying the insured against all losses arising out of tenant's/lessee's occupation of the premises by any and all tenant's/lessee's prior to the commencement of the lease.

3. Insured will obtain certificates of insurance with limits of liability equal to or greater than those provided by this policy from all contractors prior to commencement of any work performed for the insured.

4. Insured will confirm that the contractors' insurance policies have not been cancelled prior to commencement of any work by the contractors performed for the insured.

5. Insured will obtain executed hold harmless agreements from contractors indemnifying the insured against all losses from the work performed for the insured by any and all contractors prior to the commencement of the work.

6. Insured will be named as additional insured on all contractors general liability policies prior to the commencement of the work.

7. Insured will give notice of claim to all "potential insurers" within 10 days of giving notice of claim to us.

"Potential insurers" means all insurance companies who may be obligated to defend the insured as either a named insured or an additional insured. "Potential insurers" includes the insurers of all commercial tenants, commercial leasee and contractors who were contractually obligated to name the insured as an additional insured on their own insurance policy(ies).

In the event the insured fails to comply with the above conditions for a commercial tenant, commercial leasee or contractor whose tenancy, activity on the premises, negligence or work directly or indirectly gives rise to a claim, coverage for such claim will be voided under this policy. Insured agrees that we need not demonstrate any prejudice to us in order to enforce these conditions of coverage.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms of the conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy No. MGL0142595                                          Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF OTHER INSURANCE - EXCESS PROVISION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section IV, Paragraph 4.b. of the **COMMERCIAL LIABILITY CONDITIONS** is replaced as follows:

**b.  Excess Insurance**

This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis that is available to you as an insured or contractual indemnitee under a policy issued to a tenant renting or leasing land or premises from you. You are required to give notice of claim to all "potential insurers" within 30 days of giving notice of claim to us.

We have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to your rights against all those other insurers.

We will pay only our share of the amount of loss, if any, that exceeds the sum of:

(1)  the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  the total of all deductible and self-insurance amounts under all such insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

"Potential insurers" means all insurance companies who may be obligated to defend the insured as either a named insured or an additional insured. "Potential insurers" includes the insurers of all subcontractors who were contractually obligated to name the insured as an additional insured on their own insurance policy(ies).

All other Terms and Conditions of this Policy remain unchanged.

CGL 211 (03/03)                                                              Page 1 of 1

Policy No. MGL0142595                                                  Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusion is added to **Coverage A, B, and C (Section I):**

This insurance does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or medical payments arising out of:

1.  asbestos, asbestos fibers or asbestos products or to any obligation of the insured to indemnify another and/or contribute with another because of damages arising out of, or as a result of such "bodily injury," "property damage," "personal injury," "advertising injury," or medical payments;

2.  any supervision, instructions, recommendations, notices, warnings, or advice given or which should have been given in connection with the manufacturing, selling, renting and/or distributing of asbestos, asbestos fibers or asbestos products or products or premises containing asbestos;

3.  removal of asbestos or products containing asbestos including:

    a.  cost of asbestos removal and replacement with other fire retardant materials;

    b.  "property damage" in the course of removing asbestos, asbestos fibers or asbestos products.

4.  any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of asbestos, asbestos fibers, or asbestos products; or

5.  any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages, because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of asbestos, asbestos fibers, or asbestos products.

In addition, we shall not be obligated to investigate, to pay any claim or judgment or to defend any "suit" for "bodily injury," "property damage," "personal injury," "advertising injury," or medical payments caused by, resulting from or arising out of asbestos, asbestos fibers or asbestos products.

All other Terms and Conditions of this Policy remain unchanged.

Policy No. MGL0142595                                                    Mt. Hawley Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ABSOLUTE EXCLUSION – LEAD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusion is added to **Coverage A., B., and C. (Section I):**

This insurance does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or medical payments arising out of:

1.  the ingestion, inhalation or absorption of lead in any form or to any obligation of the insured to indemnify another and/or contribute with another because of damages arising out of, or as a result of such "bodily injury," "property damage," "personal injury," "advertising injury," or medical payments;

2.  any supervision, instructions, recommendations, notices, warnings, or advice given or which should have been given in connection with the manufacturing, selling, renting and/or distributing of lead or products or premises containing lead;

3.  removal of lead or products containing lead, including "property damage" in the course of removing lead;

4.  any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

5.  any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages, because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

In addition, we shall not be obligated to investigate, to pay any claim or judgment or to defend any "suit" for "bodily injury," "property damage," "personal injury," "advertising injury," or medical payments caused by, resulting from or arising out of the ingestion, inhalation or absorption of lead in any form.

All other Terms and Conditions of this Policy remain unchanged.

CGL 213 (04/98)                                                          Page 1 of 1

Policy No. MGL0142595                                          Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE EXCLUSION - POLLUTION

This endorsement modifies coverage provided under this insurance:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**Exclusion f. under SECTION I., Coverage A. and Exclusion m. under SECTION I., Coverage B. and Definition 15. under Section V.** are replaced by the following:

This insurance does not apply to:

**Pollution**

(1) "Bodily injury," "property damage" or "personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape, contamination, growth, inhalation, ingestion, absorption of or exposure to "pollutants":

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations.

    Subparagraph (d) does not apply to "bodily injury," "property damage," or "personal injury" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

    Subparagraphs (a) and (d) do not apply to "bodily injury," "property damage," or "personal injury" arising out of heat, smoke or fumes from a hostile fire.

    Subparagraphs (a) and (d) do not apply to "bodily injury," if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

    As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

    (e) Caused by or resulting from any of your product/completed operations.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, abate, remediate, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

CGL 335 (06/03)                                                          Page 1 of 2

(b) Claim or "suit" for damages because of diminution in value, loss of market value, loss of use, testing for, monitoring, cleaning up, removing, abating, remediating, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

(c) Any payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense, claim or "suit" related to any of the above.

**Definition 15. is amended to read as follows:**

"Pollutants" means any solid, liquid, gaseous, thermal or biological irritant or contaminant, including but not limited to smoke, vapor, soot, lead, asbestos, airborne fibers or spores, mold, mildew, fungus or decay, fumes, acids, alkalis, chemicals or toxins (derived from but not limited to petroleum derivative products), from any source which contaminate, pollute and/or defile any physical substance or matter. Waste includes materials to be recycled, reconditioned or reclaimed.

All other Terms and Conditions of this Policy remain unchanged.

CGL 335 (06/03)

Policy No. MGL0142595 )                                               Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BREACH OF CONTRACT EXCLUSION

This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," "personal injury," or "advertising injury" arising directly or indirectly out of the following:

a.   breach of express or implied contract;

b.   breach of express or implied warranty;

c.   fraud or misrepresentation regarding the formation, terms or performance of a contract; or

d.   libel, slander or defamation arising out of or within the contractual relationship.

All other Terms and Conditions of this Policy remain unchanged.

CGL 350 (03/01)                                                                Page 1 of 1

Policy No. MGL0142595                    )                    Mt. Hawley Insurance Company

# PREMIUM COMPUTATION ENDORSEMENT

The total advance premium shown in the Declarations of this policy is an estimated premium. We will compute the final premium (audit premium) for each audit period shown in the Declarations by taking the rate(s) shown in the Declarations times the rating basis from the audit minus the total advance premium.

Audit premiums in excess of the advance premium, are due and payable on notice to the Named Insured first shown in the Declarations. The Declarations provides for a minimum audit premium which is equal to or less than the total advance premium. If the final premium for the policy period is less than the total advance premium previously paid but more than the minimum audit premium, we will return to the Named Insured first shown in the Declarations the difference between the audit premium and the minimum audit premium. If the audit premium is less than the minimum audit premium, no return premium will be made.

In the event of mid-term cancellation, the applicable pro rata or short rate of the "total advance premium" will apply or the audited earned premium, whichever is greater. However, in no event shall the Company retain less than the "minimum premium" shown in the Declarations.

The minimum premium stated in the Declarations will be considered as fully earned at the inception of the policy.

Definitions of the most commonly used rating basis are as follows:

**Admissions:**

The total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes. The rates apply per 1,000 admissions.

**Area:**

The total number of square feet of floor space at the insured premises, computed as follows:

For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:

a.  Courts and mezzanine types of floor openings.
b.  Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.

For tenants, determine the area they occupy in the same manner as for the entire buildings.

The rates apply per 1,000 square feet of area.

**Each:**

This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the classification footnotes, such as "per person."

**Units**

A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

The rates apply per unit.

CGL 351 (03/01)H                                                    Page 1 of 1

Policy No. **MGL0142595**                                          )                                          **Mt. Hawley Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISCRIMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Coverage A., B., and C. (Section I):

This insurance does not apply, nor do we have a duty to defend any claim or suit, for "bodily injury," "property damage," "personal injury," "advertising injury" or medical payments arising out of discrimination based on, but not limited to, race, color, creed, sex, religion, age, weight, national origin, gender, handicap, familial preference, or sexual preference.

All other Terms and Conditions of this Policy remain unchanged.

CGL 358 (04/03)                                                                              Page 1 of 1

Policy No. MGL0142595                                                    Mt. Hawley Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MOLD, MILDEW AND FUNGUS EXCLUSION

In consideration of the premium for which this policy is issued, this insurance does not apply to, and we are not obligated to defend any loss, "claim," "suit" or other proceeding for:

1)  Actual or alleged "bodily injury," "property damage" or "personal injury," including death at any time resulting therefrom, caused by the actual, alleged or threatened existence of, presence of, exposure to, inhalation of, ingestion of, contact with or absorption of any mold, mildew, "fungus" or decaying substance, or

2)  Any loss, cost or expense arising out of the diminution in value, loss of market value, loss of use, monitoring, treatment, neutralizing, removal or abatement of any mold, mildew, "fungus" or decaying substance alleged to be causative or potentially causative of "bodily injury," "property damage" or "personal injury."

"Fungus" includes any mycotoxins, spores, scents or byproducts produced or released by fungi.

All other Terms and Conditions of this Policy remain unchanged.

CGL 365 (06/02)                                                                 Page 1 of 1

Policy No. MGL0142595                                            Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  This insurance does not apply to any damages because of or related to "bodily injury," "property damage," or "personal and advertising injury":

    a.  which first existed, or are alleged to have first existed, prior to the inception date of this Policy; or

    b.  which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury," "property damage," or "personal and advertising injury" continues during this policy period; or

    c.  which were caused, or are alleged to have been caused, by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this Policy.

    We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CGL 366 (02/05)                                                           Page 1 of 1

Policy No. MGL0142595                                          Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD (CONVERTED BUILDINGS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "property damage" included within the "products-completed operations hazard" for buildings if they have been converted into condominiums or co-operatives at any time prior to, during or after the policy period.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy No. MGL0142595                                      Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COMMUNICABLE DISEASE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or medical payments arising out of illness or disease because of liability or alleged liability resulting from, caused by, arising out of or in any way connected with transmission, exposure or failure to contain by an insured a "communicable disease," illness or condition.

"Communicable disease" means any infectious and/or contagious disease that can be transmitted from person-to-person, animal-to-person or animal-to-animal, directly or indirectly, including but not limited to acquired immune deficiency syndrome (AIDS), hepatitis, severe acute respiratory syndrome (SARS), herpes virus, any venereal disease or sexually transmitted illness or condition.

All other Terms and Conditions of this Policy remain unchanged.

CGL 369 (04/03)                                                      Page 1 of 1

Policy No. MGL0142595                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE SILICA EXCLUSION

This endorsement modifies coverage provided under this insurance:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that:

1.  This policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica, or any product or action used or taken to protect any person from exposure to silica in any form.

2.  This policy does not apply to "economic loss," "diminution of property," "abatement costs," or any other loss, cost, or expense including "equitable relief," in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

3.  This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

For the purpose of this exclusion only, the following additional terms are defined:

"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy No. MGL0142595                                              Mt. Hawley Insurance Company

## SERVICE OF SUIT ENDORSEMENT

It is understood and agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. The foregoing shall not constitute a waiver of the right of the Company to remove, remand or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state or United States pertinent hereto. In any suit instituted against them upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance.

The Company hereby designates Michael J. Stone, President,

**Mt. Hawley Insurance Company**

9025 N. Lindbergh Drive, Peoria, Illinois 61615 as the person to whom the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Policy No. MGL0142595                                                    Mt. Hawley Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED TERRORISM EXCLUSION
# (OTHER THAN CERTIFIED ACTS OF TERRORISM);
# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY
EXCESS LIABILITY (FOLLOWING FORM)
EXCESS UMBRELLA LIABILITY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The following exclusion is added:

**TERRORISM**

This insurance does not apply to any injury or damage arising, directly or indirectly, out of a **noncertified act of terrorism.**

With respect to any one or more **certified act of terrorism**, we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

B. The following definitions are added:

1. **Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a **certified act of terrorism**:

   a. The act resulted in aggregate losses in excess of $5 million; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. **Noncertified act of terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and that is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RIL 2126A (12/02)                                                                Page 1 of 1

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Vice President & Corporate Secretary

President & COO

ILF 0001 (01/01)

SCANNED AUG 12 '08

# EXHIBIT "C"





Smith & Laguercia, LLP
201 Broadway
New York, N.Y. 10002-694

TO: MODERN EQUITY COMPANY INC.
200 West 70th Street
New York, New York 10023-4323

C-6818A-L

FIRST CLASS MAIL

FILE NO.: C-6818A-L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------x
VINEDA COOKE,                          : Index No.: 35847/07
                                       :
                         Plaintiff,    : **NOTICE OF MOTION**
                                       :
            -against-                  :
                                       :
MODERN EQUITY COMPANY INC. and         :
TIME WARNER CABLE INC.,                :
                                       :
                         Defendants.   :
------------------------------------x

PLEASE TAKE NOTICE, that upon the annexed affirmation of Tracy L. Groves, Esq. of SMITH & LAQUERICA, LLP attorneys for plaintiff, sworn to on June 17, 2008, and upon all the prior pleadings and proceedings had heretofore herein, the plaintiff will move this Honorable Court at an IAS part thereat on the 23 day of July 2008, at the Courthouse located at 360 Adams Street, Brooklyn, New York, at 9:30 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard, for an Order granting plaintiff's motion for an order pursuant to CPLR 3215 for a default judgment against defendant MODERN EQUITY COMPANY INC. for failing to answer the Summons and Verified Complaint motion for a default judgment against the defendants, and setting this matter down for assessment of damages, and for such other and further relief as this Court may deem just and proper.

The above entitled action is for negligence/ personal injury.

Pursuant to CPLR 2214(b), answering affidavits, if any, are required to be served upon the undersigned at least 7 days before the return date of this motion.

Dated: New York, New York
June 17, 2008

Yours, etc.,

SMITH & LAQUERCIA, LLP
Attorneys for Plaintiff
VINEDA COOKE

Tracy L. Groves
291 Broadway, 16th Floor
New York, New York 10007
(212) 227-3333

TO:   MODERN EQUITY COMPANY INC.
      c/o Paul Edelstein
      61 Broadway, 22nd Fl.
      New York, New York 10006

      MODERN EQUITY COMPANY INC.
      200 West 70th Street
      New York, New York 10023-4323

      NEWMAN FITCH ALTHEIMER MYERS
      Attorneys for Defendant
      TIME WARNER CABLE
      14 Wall Street, 22nd Floor
      New York, New York 10005
      (212) 619-4350

J:\6818a\nom17.ju8.doc

2

FILE NO.: C-6818A-L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------x
VINEDA COOKE,                       : Index No.: 35847/07
                                    :
                    Plaintiff,      : **AFFIRMATION IN**
                                    : **SUPPORT**
         -against-                  :
                                    :
MODERN EQUITY COMPANY INC. and      :
TIME WARNER CABLE INC.,             :
                                    :
                    Defendants.     :
-----------------------------------x

      Tracy L. Groves, an attorney duly admitted to practice before the Courts of this State, affirms the truth of the following matters, under the penalties of perjury, as follows:

      1.    I am associated with the firm of Smith & Laquercia and am fully familiar with the facts and circumstances hereinafter set forth.

      2.    I submit this affirmation in support of plaintiff's motion for an order pursuant to CPLR 3215 for a default judgment against defendant MODERN EQUITY COMPANY INC. for failing to answer the Summons and Verified Complaint.

      3.    This is an action for personal injuries, sustained by the plaintiff who tripped and fell in front of

the premises located at 222 Amsterdam Avenue, New York, New York on April 3, 2006.

4.    The Summons and Verified Complaint were filed in the office of the county clerk on or about September 13, 2007, and served upon the defendants, at the address noted on the NYS Department of State Division of Corporations Entity Information website. We also served the Secretary of State. Defendant MODERN EQUITY COMPANY INC.'s Verified Answers was due on or before October 13, 2007. Copies of the Summons, Verified Complaint and filed Affidavits of Service are attached hereto as Exhibit "A".

5.    To date, the defendant MODERN EQUITY COMPANY INC. has failed to serve Answers or otherwise appear in this action.

WHEREFORE, it is respectfully requested that this Court grant plaintiff's motion for a default judgment against the defendant MODERN EQUITY COMPANY INC. for its failure to interpose a Verified Answer to the Summons and Verified Complaint, or otherwise plead, and set this down for assessment of damages, and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       June 17, 2008

Tracy L. Groves

J:\6818d\affminsupl7.ju8.doc

2

EXHIBIT A

FILE NO.: C-6818A-L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------x
VINEDA COOKE,
                         : Index No.: 35847/2007
                  Plaintiff,    : SUMMONS
                         :
      -against-          : Plaintiffs designate New York
                        : County as the place of trial.
MODERN EQUITY COMPANY INC. and  :
TIME WARNER CABLE INC.,      :
                        : The basis of venue is Defendant's
               Defendants.  : principal place of business.
------------------------------------------x

SIRS/MESDAMES:

           YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance, on the plaintiffs' attorneys within twenty (20) days after the service of this Summons, exclusive of the date of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint with interest and costs from the date of occurrence.

Dated:  New York, New York
        September 13, 2007

                           Yours, etc.,

                           SMITH & LAQUERCIA, LLP
                           Attorneys for Plaintiff
                           VINEDA COOKE

                           Joseph M. Guzzardo, Esq.
                           291 Broadway, 16th Floor
                           New York, New York 10007
                           (212) 227-3333

TO:   MODERN EQUITY COMPANY INC.
      c/o Paul Edelstein
      26 Court Street
      Brooklyn, New York 11242

      TIME WARNER CABLE INC.
      c/o CT CORPORATION SYSTEM
      111 Eighth Avenue
      New York, New York 10011

      J:\6818a\sumS.ju7.doc

2

FILE NO.:  C-6818A-L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------x
VINEDA COOKE,                         :  Index No.:
                                      :
                          Plaintiff,  :  **VERIFIED COMPLAINT**
                                      :
           -against-                  :
                                      :
MODERN EQUITY COMPANY INC. and        :
TIME WARNER CABLE INC.,               :
                                      :
                          Defendants. :
------------------------------------x

SIRS/MESDAMES:

     Plaintiff, VINEDA COOKE, by her attorneys, SMITH &
LAQUERCIA, LLP, complaining of the defendants herein,
respectfully shows to this Court and alleges:

     1.  That this action falls within one or more of the
exemptions set forth in the Civil Practice Law and Rules § 1602.

     2.  Upon information and belief, that at all of the
times and places hereinafter mentioned, defendant, MODERN EQUITY
COMPANY INC., was a domestic corporation.

     3.  Upon information and belief, that at all of the
times and places hereinafter mentioned, defendant, MODERN EQUITY
COMPANY INC., was a domestic limited liability company.

     4.  Upon information and belief, that at all of the
times and places hereinafter mentioned, defendant, MODERN EQUITY
COMPANY INC., was a foreign corporation.

5. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, MODERN EQUITY COMPANY INC., was a foreign limited liability company.

6. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, MODERN EQUITY COMPANY INC., did business in the State of New York.

7. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, TIME WARNER CABLE INC., was a domestic corporation.

8. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, TIME WARNER CABLE INC., was a domestic limited liability company.

9. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, TIME WARNER CABLE INC., was a foreign corporation.

10. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, TIME WARNER CABLE INC., was a foreign limited liability company.

11. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, TIME WARNER CABLE INC., did business in the State of New York.

12. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, MODERN EQUITY COMPANY INC., was the owner of premises 222 Amsterdam Avenue, in the City, County and State of New York.

2

13. Upon information and belief, that at all of the times and places hereinafter mentioned, the aforesaid premises were under the control of defendant MODERN EQUITY COMPANY INC.

14. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, MODERN EQUITY COMPANY INC. operated the aforesaid premises.

15. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, MODERN EQUITY COMPANY INC. managed the aforesaid premises.

16. Upon information and belief, that at all of the times and places hereinafter mentioned, defendant, MODERN EQUITY COMPANY INC., its agents, servants and/or employees, maintained the aforesaid premises.

17. Upon information and belief, that at all of the times and places hereinafter mentioned, it was the duty of the defendant MODERN EQUITY COMPANY INC., its agents, servants, and/or employees, to keep the aforesaid premises in a safe and proper manner.

18. Upon information and belief, that at all of the times and places hereinafter mentioned, Amsterdam Avenue, at or about its intersection with West 70th Street, in the City, County and State of New York, was and still is a public street and sidewalk in common use by the general public.

19. Upon information and belief, that at all of the times and places hereinafter mentioned, it was the duty of the

3

defendant MODERN EQUITY COMPANY INC., its agents, servants, and/or employees, to keep the public sidewalk adjacent to and abutting the aforesaid premises at 222 Amsterdam Avenue in a safe and proper manner.

20.  Upon information and belief, that at all of the times and places hereinafter mentioned, the aforesaid public sidewalk inured to the special use and benefit of the defendant, MODERN EQUITY COMPANY INC.

21.  Upon information and belief, that at all of the times and places hereinafter mentioned, the aforesaid public sidewalk adjacent to the premises located at 222 Amsterdam Avenue in the City, County and State of New York, contained a vault that was owned, operated, controlled, managed, or maintained by defendant TIME WARNER CABLE INC, its agents, servants, and/or employees.

22.  That on or about April 3, 2006, while plaintiff, VINEDA COOKE was lawfully traversing the public sidewalk of West 70th Street between Amsterdam Avenue and West End Avenue, and more particularly, in front of premises 222 Amsterdam Avenue, in the City, County and State of New York, she was caused to trip and fall as a result of the defective, dangerous, and unsafe condition on or about the public sidewalk and vault.

23.  That the said accident and the injuries and damages to the plaintiff resulting therefrom were caused solely and wholly by reason of the negligence, carelessness and

4

recklessness of the defendants, their agents, servants, and/or employees in the ownership, operation, management, maintenance and control of the aforesaid premises, and public sidewalk and sidewalk vault, in that they failed to have and keep the same in a safe and proper manner, in that they caused, allowed and permitted the said public sidewalk and sidewalk vault to be, become and remain in a defective, dangerous, hazardous and unsafe condition and to be so maintained as to prevent safe passage over and along the same by pedestrians, including this plaintiff; in that they failed to make timely, adequate and proper repairs to the said public sidewalk and sidewalk vault; in that they failed to warn the plaintiff of the defective, irregular, dangerous, hazardous and unsafe conditions existing in and upon the said public sidewalk and sidewalk vault; and that they failed to erect proper barriers, guards or other warnings at, about and around the defective, irregular, dangerous, hazardous and unsafe conditions existing in and upon the said public sidewalk and sidewalk vault; in that they owned, operated, managed, maintained and controlled the aforesaid public sidewalk and sidewalk vault, and premises in reckless disregard for the safety of the plaintiff and others traversing the said public sidewalk and sidewalk vault; in that they violated the statutes, ordinances, rules and regulations in the cases made and provided; in that they were inattentive to their duties, wherein had they been attentive to their duties, the accident and ensuing injuries

5

could have and would have been avoided; in that they failed to act as reasonable and prudent persons could have and would have under the circumstances and conditions then and there prevailing; in that they acted in reckless disregard for the safety of others and this plaintiff in particular; in that they failed to take all necessary and proper means and precautions to avoid the said accident.

24. That the defendants their agents, servants, and/or employees, knew or in the exercise of reasonable care could and should have known of the defective, irregular, dangerous, hazardous and unsafe conditions complained of.

25. That as a result of the negligence of the defendants, their agents, servants, and/or employees, plaintiff VINEDA COOKE sustained injuries to various parts of her head, body, limbs and nervous system, and upon information and belief, some of her said injuries are of a permanent and/or protracted nature; that by reason thereof, she was confined to hospital, bed and home and prevented from attending to her usual duties and activities; and she was required and will be required to obtain medical aid and attention in an effort to cure and alleviate her said injuries, and incurred obligations therefor.

26. That by reason of the foregoing, plaintiff VINEDA COOKE has been damaged in an amount that exceeds the jurisdictional limitations of all lower courts.

6

WHEREFORE, plaintiff VINEDA COOKE demands judgment against the defendants, MODERN EQUITY COMPANY INC. and TIME WARNER CABLE INC., in a sum that exceeds the jurisdictional limits of all lower courts, together with interest and the costs and disbursements of this action.

Dated:  New York, New York
        September 13, 2007

                                Yours, etc.,

                                SMITH & LAQUERCIA, LLP
                                Attorneys for Plaintiff
                                VINEDA COOKE


                                _____
                                Joseph M. Guzzardo
                                291 Broadway, 16th Floor
                                New York, New York 10007
                                (212) 227-3333

J:\681Ba\Compl5.ju7.doc

7

# INDIVIDUAL VERIFICATION

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK)


VINEDA COOKE being duly sworn, deposes and says: deponent is the plaintiff in the within action and has read the foregoing COMPLAINT and knows the contents thereof.  The same is true to deponent's own knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters deponent believes them to be true.

*Vineda Cooke*

VINEDA COOKE

Sworn to before me on
the ___ day of September, 2007

Notary Public

J:\6618a\VERS.ju7.doc

SMARANDA A. GATA-LUNGU
New York
New York County No.
C1GA60300038
My Commission Expires

PLAINTIFF(S):                VINEDA CCORE

DEFENDANT(S):                MODERN EQUITY COMPANY INC. and TIME
                             WARNER CABLE INC.,

IAS entry date _____

Judge Assigned _____

RJI Date _____

Date issue joined: _____

Bill of particulars served?    (Y/N):    [ ] Yes    [X] No

## NATURE OF JUDICIAL INTERVENTION (check ONE box only AND enter information)

[X] Request for preliminary conference

[ ] Note of issue and/or certificate of readiness

[ ] Notice of motion (return date: _____)
    Relief sought:

[ ] Order to show cause
    (clerk enter return date: _____)
    Relief sought _____

[ ] Other ex parte application (specify: _____)

[ ] Notice of petition (return date: _____)
    Relief sought _____

[ ] Notice of medical or dental malpractice
    action (specify: _____)

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] Other (specify: _____)

## NATURE OF ACTION OR PROCEEDING (Check ONE box only)

### MATRIMONIAL
| | |
|---|---|
| [ ] Contested | -CM |
| [ ] Uncontested | -UM |

### COMMERCIAL
| | |
|---|---|
| [ ] Contract | -CONT |
| [ ] Corporate | -CORP |
| [ ] Insurance (where insurer is a party, except arbitration) | -INS |
| [ ] UCC (including sales, negotiable instruments) | -UCC |
| [ ] *Other Commercial | -OC |

### REAL PROPERTY
| | |
|---|---|
| [ ] Tax Certiorari | -TAX |
| [ ] Foreclosure | -FOR |
| [ ] Condemnation | -COND |
| [ ] Landlord/Tenant | -LT |
| [ ] *Other Real Property | -ORP |

### OTHER MATTERS
| | |
|---|---|
| [ ] * _____ | -OTH |

* If asterisk used, please specify.

### TORTS
Malpractice
| | |
|---|---|
| [ ] Medical/Pediatric | -MM |
| [ ] Dental | -DM |
| [ ] *Other Professional | -OPM |
| [ ] Motor Vehicle | -MV |
| [ ] *Products Liability | -PL |
| [ ] Environmental | -EN |
| [ ] Asbestos | -ASB |
| [ ] Breast Implant | -BI |
| [X] *Other Negligence Premises Liability | -OTN |
| [ ] *Other Tort (including intentional) | OT |

### SPECIAL PROCEEDINGS
| | |
|---|---|
| [ ] Art. 75 (Arbitration) | -ART75 |
| [ ] Art. 77 (Trusts) | -ART77 |
| [ ] Art. 78 | -ART78 |
| [ ] Election Law | -ELEC |
| [ ] Guardianship (MHL Art. 81) | -GUARD81 |
| [ ] *Other Mental Hygiene | -MHYG |
| [ ] *Other Special Proceeding | -OSP |

Check "YES" or "NO" for each of the following questions:

Is this action/proceeding against a

YES  NO
[ ]  [X]  Municipality:                    YES   NO
         (Specify_____)          [ ]   [ ] Public Authority:
                                                    (Specify_____)

YES  NO
[ ]  [X]  Does this action/proceeding seek equitable relief?
[X]  [ ]  Does this action/proceeding seek recovery for personal injury?
[ ]  [X]  Does this action/proceeding seek recovery for property damage?

Pre-Note Time Frames:
(This applies to all cases except contested matrimonial and tax certiorari cases)

Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):

[ ] Expedited: 0-8 months

                                          [X] Standard: 9-12 months
                                          [ ] Complex: 13-15 months

Contested Matrimonial Cases Only: (Check and give date)

   Has summons been served?              [ ] No        [ ] Yes, Date_____

   Was a Notice of No Necessity filed?   [ ] No        [ ] Yes, Date_____

ATTORNEY(S) FOR PLAINTIFF(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | SMITH & LAQUERCIA, LLP | 291 Broadway, 16th Floor New York, NY 10007 | 212-227-3333 |

ATTORNEY(S) FOR DEFENDANT(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | NEWMAN FITCH ALTHEIMER MYERS Attorneys for Defendant TIME WARNER CABLE | 14 Wall Street, 22nd Floor New York, New York 10005 | (212) 619-4350 |

*Self Represented: parties representing themselves, without an attorney, should check the "Self Rep." box and enter their name, address, and phone # in the space provided above for attorneys.

INSURANCE CARRIERS:

RELATED CASES: (IF NONE, write "NONE" below)
Title          Index #          Court          Nature of Relationship

None

   I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.

Dated: June 17, 2008

                              _____
                              (Signature)
                              TRACY L. GROVES

                              SMITH & LAQUERCIA, LLP
                              ATTORNEYS FOR Plaintiff

        ATTACH RIDER SHEET IF NECESSARY TO PROVIDE REQUIRED INFORMATION

H:\6815a\rji17.ju8.doc

EXHIBIT "D"

Subj:    **(no subject)**
Date:    7/7/2008 11:16:20 A.M. Eastern Daylight Time
From:    MattNYR94
To:      GoConnor@rlicorp.com
CC:      howard@erichcourant.com, jhharbour@sdkpc.com, ssperber@sdkpc.com, MKaplan120

To: Grace O'Connor

From: Modern Equity Co.
      200 West 70TH Street
      New York, NY 10023

Grace,

After talking to the Secretary of State of NY it has been determined that the address for Modern Equity Co. is not correct, as we discussed. Modern Equity was never served on a slip and fall in a timely manner. We never received any notice of the alleged incident nor did my staff. No one on my staff witnessed the alleged slip and fall. All we received was the notice of motion that was sent to Mt. Hawley immediately that day. All we can do is forward what we receive in a timely matter.

Matt Kaplan

Gas prices getting you down? Search AOL Autos for fuel-efficient used cars.

Monday, July 28, 2008 America Online: MattNYR94

Subj:     (no subject)
Date:     7/11/2008 10:28:40 A.M. Eastern Daylight Time
From:     MattNYR94
To:       GoConnor@rlicorp.com

Grace,

Did you talk to your supervisor about the claim.

Matt Kaplan

Get the scoop on last night's hottest shows and the live music scene in your area - Check out TourTracker.com!

Subj:    **Fw: (no subject)**
Date:    7/14/2008 3:29:24 P.M. Eastern Daylight Time
From:    Grace_O&apos;Connor@rlicorp.com
To:      MattNYR94@aol.com

Matt:

As you requested, here's a copy.

Grace O'Connor
RLI Insurance Company / Mt. Hawley Insurance
655 Winding Brook Drive, 4th Floor
Glastonbury, CT 06033
(860) 652-3044 ext. 1517
(860) 494-4898 fax
GConnor@rlicorp.com
----- Forwarded by Grace O'Connor/hf/rlicorp on 07/14/2008 03:28 PM -----

| Grace O'Connor/hf/rlicorp | To MattNYR94@aol.com |
| 07/11/2008 02:46 PM | cc |
| | Subject Re: (no subject) |

Matt.

I'm sorry that I can't give you better news. My supervisor is of the same opinion. Mt. Hawley is maintaining its coverage position. I also received a letter from your attorney Steven Sperber. I will be sending him a reply next week and will cc you on it.

Regards.

Grace O'Connor
RLI Insurance Company / Mt. Hawley Insurance
655 Winding Brook Drive, 4th Floor
Glastonbury, CT 06033
(860) 652-3044 ext. 1517
(860) 494-4898 fax
GConnor@rlicorp.com
   MattNYR94@aol.com

| MattNYR94@aol.com | To GoConnor@rlicorp.com |
| 07/11/2008 10:28 AM | cc |
| | Subject (no subject) |

Grace,

Did you talk to your supervisor about the claim.

Matt Kaplan

Monday, July 28, 2008 America Online: MattNYR94

Get the scoop on last night's hottest shows and the live music scene in your area - Check out TourTracker.com!







MT. HAWLEY
Insurance Co.

July 3, 2008

**CERTIFIED MAIL** *7004 0750 0003 2877 8974*
Melvin Kaplan et al.
170 W. 74th Street
New York, NY 10023

*Via facsimile 917-441-3599*
Mathew Kaplan
Modern Equity Company, Inc.
200 West 70th Street
New York, NY 10023

RE:    <u>Veneda Cooke v. Modern Equity Company Inc. et al.</u>
    Policyholder:    Melvin Kaplan et al.
    Claim No:    00222103
    DOL:    04/03/06

Dear Mr. Kaplan:

    This will confirm that Mt. Hawley Insurance Company (hereinafter, "Mt. Hawley") received its first notice of the above occurrence, claim and suit on June 23, 2008 by way of a motion for default and complaint entitled <u>Veneda Cooke v. Modern Equity Company Inc. et al.</u> filed in the Supreme Court of Kings County, New York and bearing index no. 35847/2007.

    Mt. Hawley issued a certain Commercial General Liability Policy to Melvin Kaplin et al. and Modern Equity Company, Inc.., bearing policy number MGL0142595 with a commencement date of June 30, 2005 and termination date of June 30, 2006 (hereinafter, "the policy"). The policy provides limits of $1,000,000 per occurrence, subject to the terms, exclusions and conditions contained therein.

    The claims raised have been reviewed in conjunction with the general liability policy referenced above. Please be advised that there is no coverage for this claim and suit under your commercial general liability policy with Mt. Hawley Insurance Company. We direct your attention to the relevant provisions of the policy, which are provided for your convenience. You must immediately obtain counsel to protect your interests in connection with this matter. The above referenced motion for default is returnable on July 23, 2008.

Mt. Hawley Insurance Co.
Special Risk Branch Office
655 Winding Brook Drive
Fourth Floor
Glastonbury, CT 06033
Telephone: (860) 652-3044
Facsimile: (860) 652-3046
Internet: www.rlicorp.com

.

.